| Case Number: | A 2102477 |
|---|---|
| Court: | Common Pleas Civil |
| Case Caption: | DONALD A WEGMAN vs. RUMPKE OF OHIO INC |
| Judge: | JENNIFER L BRANCH |
| Filed Date: | 07/20/2021 |
| Case Type: | H705 - OTHER CIVIL & JURY DEMAND |
| Total Deposits: | $640.00 Credit |
| Total Costs: | $317.00 |

Case History

[Show All Rows]

| Date | Description | Amount |
|---|---|---|
| 08/02/2021 | ELECTRONIC POSTAL RECEIPT RETURNED, COPY OF SUMMONS & COMPLAINT DELIVERED TO JESUS JESSE VELASQUEZ ON 07/26/21, FILED. [CERTIFIED MAIL NBR.: 7194 5168 6310 0943 9185] | |
| 08/02/2021 | ELECTRONIC POSTAL RECEIPT RETURNED, COPY OF SUMMONS & COMPLAINT DELIVERED TO WILLIAM RUMPKE JR ON 07/28/21, FILED. [CERTIFIED MAIL NBR.: 7194 5168 6310 0943 9192] | |
| 07/28/2021 | JUDGE ASSIGNED CASE ROLLED TO BRANCH/JENNIFER/L PRIMARY | |
| 07/26/2021 | ELECTRONIC POSTAL RECEIPT RETURNED, COPY OF SUMMONS & COMPLAINT DELIVERED TO ERIC BOSTIAN ON 07/24/21, FILED. [CERTIFIED MAIL NBR.: 7194 5168 6310 0943 9208] | |
| 07/26/2021 | ELECTRONIC POSTAL RECEIPT RETURNED, COPY OF SUMMONS & COMPLAINT DELIVERED TO MATTHEW J BAUER ON 07/24/21, FILED. [CERTIFIED MAIL NBR.: 7194 5168 6310 0943 9178] | |
| 07/21/2021 | SUMMONS ISSUED BY CERTIFIED MAIL TO MATTHEW J BAUER | |
| 07/21/2021 | SUMMONS ISSUED BY CERTIFIED MAIL TO JESUS JESSE VELASQUEZ | |
| 07/21/2021 | SUMMONS ISSUED BY CERTIFIED MAIL TO WILLIAM RUMPKE JR | |
| 07/21/2021 | SUMMONS ISSUED BY CERTIFIED MAIL TO ERIC BOSTIAN | |
| 07/21/2021 | SUMMONS ISSUED BY CERTIFIED MAIL TO KYLE AUGHE | |
| 07/21/2021 | CERTIFIED MAIL SERVICE ISSUED TO MATTHEW J BAUER [CERTIFIED MAIL NBR.: 7194 5168 6310 0943 9178] | |
| 07/21/2021 | CERTIFIED MAIL SERVICE ISSUED TO KYLE AUGHE [CERTIFIED MAIL NBR.: 7194 5168 6310 0943 9161] | |
| 07/21/2021 | CERTIFIED MAIL SERVICE ISSUED TO ERIC BOSTIAN [CERTIFIED MAIL NBR.: 7194 5168 6310 0943 9208] | |
| 07/21/2021 | CERTIFIED MAIL SERVICE ISSUED TO WILLIAM RUMPKE JR [CERTIFIED MAIL NBR.: 7194 5168 6310 0943 9192] | |
| 07/21/2021 | CERTIFIED MAIL SERVICE ISSUED TO JESUS JESSE VELASQUEZ [CERTIFIED MAIL NBR.: 7194 5168 6310 0943 9185] | |
| 07/20/2021 | CASE DEPOSIT & JURY DEMAND BY CAROLYN ANNE BETTS | 640.00- |
| 07/20/2021 | CLASSIFICATION FORM FILED. | |
| 07/20/2021 | COMPLAINT & JURY DEMAND FILED | |

# ORIGINAL

## IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

**DONALD A. WEGMAN**
8238 Bonanza Lane
Cincinnati, OH 45255

    **Plaintiff,**

vs.

**RUMPKE OF OHIO, INC.**
c/o James E. Thaxton
10795 Hughes Road
Cincinnati OH 45251

**KYLE AUGHE**
6720 Oakfield Drive
Dayton, OH 45215

**MATTHEW J. BAUER**
7277 Wetherington Drive
West Chester, OH 45069

**JESUS "JESSE" VELASQUEZ**
5165 Mallet Club Drive
Dayton, OH 45439-4217

**WILLIAM RUMPKE, JR.**
11300 Terwilligers Knoll Court
Cincinnati, Ohio 45249

**ERIC BOSTIAN**
7982 Celestial Circle
Liberty Township, OH 45044

**RUMPKE CONSOLIDATED
COMPANIES, INC.**
c/o James E. Thaxton
10795 Hughes Road
Cincinnati, OH 45251

    **Defendants.**

**CASE NO.:**   A2102477

**JUDGE** _____

**COMPLAINT
AND JURY DEMAND
ENDORSED HEREIN**



D132483883 INI

FILED

2021 JUL 20 P 4: 10

CLERK OF COURTS
HAMILTON COUNTY, OH
COMMON PLEAS



VERIFY RECORD

1

Now comes Plaintiff, Donald A. Wegman, who hereby alleges and asserts against the Defendants as follows:

## I.    RECITALS JURISDICTION AND PARTIES

1.   This is a wrongful termination and retaliation action pursuant to R.C. §§ 4123.90 and 4113.52 and at common law; a claim for violation of the Family and Medical Leave Act of 1993, 29 U.S.C. §2601*ff* ("FMLA"), and the Families First Coronavirus Response Act of 2020, Public Law 116-127 ("FFCRA"); a claim for wrongful discharge in violation of public policy; a claim for verbal sexual harassment and sexually hostile work environment and discrimination on the basis of religion under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *ff.* and R.C. § 4112 *ff.* and a claim for intentional infliction of emotional distress proximately caused by the foregoing.

2.   Plaintiff Donald A. Wegman at all times relevant hereto has resided at 8238 Bonanza Lane, Cincinnati, Hamilton County, Ohio 45255.

3.   Plaintiff was employed with Defendant Rumpke of Ohio, Inc. from approximately February 2, 2018, through approximately January 22, 2021 as an outside salesman of the dumpster, recycling and other services of Defendant within the Clermont County, Ohio territory.

4.   Defendant Rumpke of Ohio, Inc. (together with defendant Rumpke Consolidated Companies, Inc., "Rumpke" or, together with other defendants named herein, a "Defendant") is an Ohio corporation with its principal office located at 3990 Generation Drive, Cincinnati, OH 45251

:

5.   Defendant Rumpke Consolidated Companies, Inc., (together with defendant Rumpke of Ohio, Inc., "Rumpke" or, together with other defendants named herein, a "Defendant") is an Ohio corporation with its principal office located at 3990 Generation Drive, Cincinnati, OH 45251.

2

6. Defendant Jesse Velasquez ("Velasquez" or, together with other defendants named herein, a "Defendant"), residing at 5165 Mallet Club Dr, Dayton, OH 45439-4217, was the immediate supervisor of Plaintiff from approximately August 2018 until Plaintiff's termination.

7. Defendant Kyle Aughe ("Aughe" or, together with other defendants named herein, a "Defendant"), residing at 6720 Oakfield Drive, Dayton, Ohio 45215, was a management employee at Rumpke who served as the immediate supervisor of Defendant Velasquez during all times relevant to this action.

8. Defendant Matthew Bauer ("Bauer" or, together with other defendants named herein, a "Defendant"), residing at 7277 Wetherington Drive, West Chester, OH 45069, served as the Director of Sales and Marketing at Rumpke during all times relevant to this action.

9. Defendant Eric Bostian, residing at 7982 Celestial Cir, Liberty Township, OH 45044-1188, served as Rumpke's Director of Human Resources at all times relevant to this action.

10. Defendant William Rumpke, Jr. ("Bill Rumpke" or, together with other defendants named herein, a "Defendant"), residing at 11300 Terwilligers Knoll Court, Cincinnati, OH 45249, was the CEO of Rumpke and immediate supervisor of Eric Bostian and Matt Bauer at all times relevant to this action.

11. At all times relevant hereto, Rumpke had more than 50 employees within 75 miles of Rumpke's principal place of business.

12. Plaintiff worked more than 1,250 hours for Rumpke during the 12 months preceding Rumpke's denial of FMLA benefits to Plaintiff in October 2020.

## II. FACTS

13. Plaintiff realleges Paragraphs 1 through 12 the same as if fully rewritten herein.

3

14. Plaintiff was employed by Defendant Rumpke as an outside salesman in the Clermont County sales territory of Rumpke's East Territory, out of the Dayton Office, from January 29, 2018 until his employment was terminated on January 22, 2021.

15. Plaintiff was paid a base salary, starting at $700 per week. Plaintiff had a car allowance of $325 per month and bonuses equal to the customers' first-months' fees on their three-year contracts. Rumpke's policies regarding allocation of commissions (a) between East and West territories and (b) between inside and outside salesmen varied from time, were inconsistent generally to the detriment of East Territory (as opposed to West Territory) salesmen and outside salesmen (as opposed to inside salesmen) like Plaintiff. When a customer cancelled a contract, the salesman was penalized by a reversal of his or her full commission, but when a reversal took place, there was no reimbursement for withheld taxes on the original commission. Virtually all outside salesmen complained repeatedly and vocally at sales meetings about Rumpke's commission back-out policy and tendency to allocate sales to inside sales staff instead of outside salesmen.

16. Plaintiff's job was to to make sales of Rumpke's dumpster-related services at locations within Clermont County, out of Rumpke's East Territory office in Dayton, which services were documented by Plaintiff in standard Rumpke Sales Order Agreements to which some outside salesmen, including Plaintiff, with the permission of Rumpke, added provisions limiting price increases during the first three years of such contracts ("Customer Contracts").

17. The sales increase limitations in the Customer Contracts provided that there would be no price increases within the first year and that second- and third-year price increases would be limited to 5%.

18. Customers' Contracts provided for auto-pay pursuant to which Rumpke deducted monthly dumpster service fees from the customers' bank accounts through electronic funds transfer ("ETF").

4

19. Without disclosure to the salesmen or their customers, Rumpke was in the habit of increasing customers' prices during the first three years of their contracts by 12% to 25%, even when the Customer Contracts included limits on price increases as described in Paragraph 17.

20. When salesmen received complaints from their customers regarding unauthorized EFT transactions and complained at sales meetings, they were instructed by Defendant Velasquez to inform customers (inaccurately) that there had been a mistake and that their unauthorized EFTs would be refunded. They were further told that most customers would not notice unauthorized autopay debits to their bank accounts.

21. Before Customer Contracts were finalized, prospective sales were recorded on a "GMS sales board" according to stage of sale, *i.e.,* categories "Prospect," "25%," "50%," "90%" and "closed." A salesman under an EPIP (see Paragraph 65) filled out a spreadsheet, or worksheet, with information regarding pending sales instead of using the GMS sales board.

22. In June 2018, Plaintiff received a "meets expectations" performance review stating that Plaintiff was a team player, "takes his job seriously," "stays on task," and "in the job early and stays late" from his supervisor, Richard Turner, and was granted a raise in base salary.

23. On June 25, 2018, Plaintiff suffered a heart attack, to which Plaintiff's physician said job-related stress contributed. Plaintiff was put on FMLA unpaid leave by Richard Turner (without request therefor) to recover from this heart attack.

24. Plaintiff complained during open Dayton Office sales meetings and in writing by email to Defendant Velasquez, Sandra Jennings and Ashley Essex in the HR Department, starting in October 2018, about Rumpke's:

(a) Practice of reversing commissions for sales for which customers failed to complete their contracts -- with no compensation for previously-withheld taxes;

5

(b) Failure to compensate for previously-withheld taxes when commissions were reversed as described in (a) above;

(c) Failure to pay commissions to outside salesmen whose original commissions were reversed as provided in (a) above when customers reinstated their contracts following COVID-19 or otherwise;

(d) Practice of referring prospective customers and paying commissions to members the inside sales force (at a lower commission rate) instead of to outside salesmen in whose territories the prospects were located; and

(e) Failure to pay commissions to Dayton Office outside salesmen for sales in Dayton Office territories made by salesmen outside the Dayton Office but paying commissions to salesmen outside the Dayton Office for sales in the Dayton Office territory; and

(f) Intentional violation of the terms of Customer Contracts by increasing their service fees during the first three contract years.

25. On January 23, 2019 Plaintiff received a disciplinary notice for leaving his territory. Rumpke has no written policy prohibiting outside salesmen from leaving their assigned territories, if necessary, to make a sale (e.g., when individuals responsible for potential customer contracts have offices outside Plaintiff's Clermont County territory).

26. In response to the January 23, 2019 disciplinary notice, Plaintiff explained to his immediate supervisor Defendant Velasquez that Plaintiff's sales call to Patrick Miller of Jamestown Crossing in Covington, KY on January 23, 2019 involved an attempt to obtain a contract for a dumpster located in Plaintiff's territory of Clermont County, Ohio and that the sales call was made during Plaintiff's lunch hour. Plaintiff explained further that Patrick Miller and Jamestown Crossing had no office

6

located in the Clermont County territory and therefore any sale of services to a dumpster of Jamestown Crossing had to be made at the offices located in Covington, Kentucky.

**27.** Plaintiff's performance review in February 2019 by Defendant Velasquez, his immediate supervisor, stated that Plaintiff's performance was at least as favorable as "meets expectations" but was later changed by Kyle Aughe to "below expectations." Plaintiff was denied a raise.

**28.** On August 7, 2019 in Lima, Ohio while returning from a work-related Rumpke sales call during a "sales blitz," Plaintiff was involved in an automobile accident that resulted in a concussion, loss of consciousness, head injuries and possible injuries to his right knee.

29. Plaintiff reported the accident to Defendant Velasquez, who visited Plaintiff in the hospital in Lima.

30. On May 13, 2019, Plaintiff suffered a second stress-related heart attack. Plaintiff took several days of sick leave for his recovery during which he did not work.

31. On August 15, 2019, Plaintiff filed a complaint with Ohio Bureau of Workers' Compensation ("OBWC"), claim no., 19-176774 ("First OBWC Claim"), for injuries suffered in the automobile accident. Rumpke, which is self-insured, denied Plaintiff's First OBWC Claim.

32. Plaintiff's initial immediate supervisor, Richard Turner, was replaced by Defendant Jesse Velasquez on or about August 2018, who served as Plaintiff's immediate supervisor until Plaintiff was terminated.

33. During a January 10, 2019 Dayton Office sales meeting, all East Territory outside salesmen were asked to sign a new sales incentive program agreement. Plaintiff did not want to sign the agreement without further explanation, explaining that he did not understand the terms and that his supervisor, Richard Turner, had told him not to sign it until he received an explanation.

7

34. When Plaintiff failed to sign the sales incentive program agreement, Matthew Bauer, Sales Director at Rumpke, raised his voice at Plaintiff and called Plaintiff several lewd names (e.g., "cocksucker") when Plaintiff refused to sign the sales incentive program agreement ("Matt Bauer Incident"). Thereafter, other salesmen made fun of Plaintiff during sales meetings, *e.g.*, "you have cum on the corner of your mouth and if you're meeting with Matt Bauer you had better take knee pads because you're going to suck his [expletive deleted]."

35. Defendant Velasquez, Scott McQuillan and most of the Dayton Office outside sales force attended the aforementioned sales meeting and several other salesmen (including Brian Poynter) later said that they had heard Matt Bauer's bullying of Plaintiff. Drew Watson, a salesman who joined the sales team after the subject meeting, later stated that he had heard others state they had heard of Matt Bauer's statements.

36. Other employees of Rumpke picked up the term "cocksucker" from the Matt Bauer Incident and made fun of Plaintiff using that name thereafter.

37. Rumpke had a written anti-harassment policy ("Anti-Harassment Policy") that prohibited, among other things, verbal sexual harassment, defined to include "innuendos, sexual comments, jokes of a sexual nature, sexual propositions, lewd remarks and threats and verbal abuse or "kidding" that is oriented toward a prohibitive form of harassment, including that which is sexual in nature and unwelcome" and retaliation against an employee for filing a bona fide complaint under the Anti-Harassment Policy.

38. The Anti-Harassment Policy provided for a complaint procedure under which the Director of Human Resources (i.e., Eric Bostian) must report any complaint of violation of the Anti-Harassment Policy to the company and disclose it to the company's legal counsel. Any such complaint must be handled "swiftly and confidentially." The Human Resources Director has five days in which to report

8

the complaint to the person charged and initiate an investigation to determine whether there is a reasonable basis for the complaint. During the investigation, witnesses, the complainant and the person charged are to be interviewed. As soon as reasonably possible the results of the investigation are to be reported to the company. Within five business days of the completion of the investigation, the Human Resources Director is to meet with the complainant and person charged to disclose the results of the investigation and disciplinary or other action to be taken, if any, to redress the violation if a violation is found or if the investigation is inconclusive, advise regarding any recommended action to address problematic conduct.

39. Plaintiff promptly, on the day of the Matt Bauer Incident, registered a formal complaint with Defendant Velasquez regarding Matt Bauer's bullying as prohibited conduct under Rumpke's Anti-Harassment Policy.

40. Plaintiff received a "meets expectations" performance review from his immediate supervisor, Defendant Velasquez, stating "Don is a hard dependable worker," he has done well to set a positive example to all employees at Rumpke," "Don is good at thinking outside the box," "works well to adjust through the sales role and management changes," "sales numbers are reflecting a positive trend," "Don does well relating and communicating with Rumpke employees," "Don has a genuine concern for customer care and satisfaction," "he fosters a workplace environment free from harassment, unwelcome physical contact, demeaning gestures or any other expressions that could be seen as inappropriate or offensive," "Don complies with all Rumpke laws, regulations, policies and department procedures," and "Don is diligent in his efforts to be a team player especially in maintaining relationships with all Rumpke departments" in July 2019.

41. In November 2019, hearing nothing regarding the required investigation of his Anti-Harassment Policy complaint and the results thereof, Plaintiff sent an email to Eric Bostian registering a complaint regarding the lack of action on the Matt Bauer Incident.

42. Thereafter, a meeting was held regarding Plaintiff's harassment complaint at which Defendant Aughe, Defendant Velasquez, Defendant Bostian and Plaintiff were in attendance. When Plaintiff requested the results of Defendant Bostian's "full investigation" of the Matt Bauer Incident, Defendant Bostian refused to provide any details.

43. At the meeting, Defendant Velasquez claimed he knew nothing about the Matt Bauer Incident and Plaintiff's complaint as described in Paragraph 39 above.

44. When Eric Bostian refused Plaintiff's request for details about the required "full investigation" of the Matt Bauer Incident, Plaintiff requested a meeting with Bill Rumpke, Jr. The reason Plaintiff requested this meeting was that Defendant Bill Rumpke. made it known generally that he had an "open door policy" with employees.

45. In response to Plaintiff's request for a meeting with Defendant Bill Rumpke, Defendant Bostian stated that Defendant Rumpke, specifically, Defendant Bostian, would "get back to you." Plaintiff commented that he knew Bill Rumpke, Jr. as a friend of Plaintiff's brother from high school, knew where Defendant Bill Rumpke lived and could go to see him at any time.

46. No action was taken against Matt Bauer to address Plaintiff's complaint and Plaintiff's request to meet with Defendant Bill Rumpke was denied in an email from Eric Bostian. Plaintiff did not thereafter, until his termination, attempt to contact Defendant Bill Rumpke

47. From approximately April 2020 through Plaintiff's termination, due to state directives regarding the COVID-19 pandemic, Rumpke's employees, including outside sales staff, were ordered to work from home instead of from Rumpke facilities, but outside sales employees were expected

otherwise to perform their jobs as usual and were compensated accordingly. During the pandemic shut-down, outside salesmen were expected to make in-person sales calls to close Customer Contracts and to drive around looking for prospective customers.

48. During calendar year 2020 new contract sales quotas for East Territory outside salesmen were not decreased as the result of COVID-19. Upon information and belief, Rumpke instituted no layoffs of East Territory outside salesmen during 2020 as the result of benefits received under the PPP (federal Paycheck Protection Program).

49. New contract sales quotas for calendar year 2020 were increased for Plaintiff and Brian Poynter, but quotas for no other Dayton Office outside salesmen were increased.

50. In March 2020 Plaintiff received an important sales award from Rumpke for exceeding his sales quota.

51. In April 2020, Plaintiff received a disciplinary write-up for indicating that he might go to Bill Rumpke, Jr. to complain about the handling of Plaintiff's harassment complaint against Matt Bauer. Defendants Kyle Aughe and Valasquez admitted to Plaintiff that they knew Plaintiff's statement that he knew where Bill Rumpke, Jr. lives was not a threat.

52. During a telephone meeting regarding Plaintiff's harassment complaint attended by Defendant Velasquez and Defendant Aughe, Plaintiff was told that he was suspended for a week without pay for making a "veiled threat" against Bill Rumpke, Jr. even though Defendants Aughe and Velasquez knew that Plaintiff's statement was not a threat.

53. In April 2020 Defendant Aughe gave Plaintiff a poor performance review and Plaintiff received no annual raise. Defendant Velasquez told Plaintiff that he Defendant Velasquez, had given Plaintiff a more favorable performance review that Defendant Aughe had changed the initial review.

54. On July 7, 2020, Defendant Velasquez called Plaintiff at approximately 4:15 PM and requested that he hurriedly make a sales call before the end of the business day to a prospective customer, Signature Stone Design, which required Plaintiff to first put on his Rumpke uniform. While he was putting on his Rumpke uniform for the Rumpke sales call, Plaintiff fell and injured (or reinjured) his right knee and took some paid sick leave for recovery but not the full number of days recommended by Plaintiff's physician (who said he should take off until August 3, 2020).

55. On July 30, 2020, Plaintiff filed a second application for OBWC benefits, claim no., 20-154050 ("Second OBWC Claim) in connection with the injury sustained on July 7, 2020. Rumpke subsequently denied Plaintiff's Second OBWC Claim.

56. In September of 2020 Rumpke decreased the size of Plaintiff's sales territory by a not-insignificant amount.

57. In approximately September 2020, Tyler Rumpke called Brian Poynter and Plaintiff and told them that, according to Bill Rumpke, Jr., if they sold an account in their respective territories, they would receive commissions for such sales, irrespective of who was servicing the account (i.e., West Territory or East Territory servicing).

58. After the call referred to in the immediately preceding paragraph, Brian Poynter and Plaintiff were denied commissions for accounts in their respective territories that were serviced by the West Territory office.

59. On October 14, 2020, Plaintiff received a disciplinary notice for a "GMS" [sales] board violation because he listed a verbal sale as "sold" before receiving the signed contract. This disciplinary notice was later converted to a "note to file" because Plaintiff actually produced a signed contract.

60. Plaintiff experienced symptoms of and on October 28, 2020 was diagnosed by his doctor as having the COVID-19 virus as that term is defined in the FFCRA on October 29, 2021. Plaintiff believes that he contracted COVID-19 while performing his job with Rumpke due to his exposure to the general public as part of his job responsibilities.

61. On October 29, 2020, Plaintiff notified Defendant Velasquez of his illness and provided documentation verifying his positive COVID-19 test result.

62. On or about November 2, 2020 Defendant Rumpke through its employee Defendant Velasquez informed Plaintiff that he was denied two weeks' paid leave at his regular rate of pay to which Plaintiff was entitled under § 3102 of the FFCRA and denied unpaid leave to which he was entitled under the § 102(a)(1)(D) of the FMLA, thereby forcing Plaintiff to work at home during his illness with COVID-19 and pneumonia, which lasted between two and three weeks.

63. On November 10, 2021, Plaintiff provided Defendant Velasquez with an X-ray indicating pneumonia in Plaintiff's left lung. Plaintiff's work status (i.e., working full time at home) was not changed.

64. In December 2020, Defendant Rumpke increased Plaintiff's monthly sales quota by approximately 50% (i.e., from $800 to $1,250) effective January 1, 2021.

65. In December 2020, Defendant Rumpke through its employee Defendant Velasquez, placed Plaintiff on an employee performance improvement plan ("EPIP"), effective January 1, 2021, for failure to meet his $800/month quota during the pandemic shut-down. Brian Poynter, whose territory was a similarly difficult sale to Plaintiff's Clermont County territory, was $500/month. Poynter was not put on an EPIP to Plaintiff's knowledge.

66. While on the EPIP, on January 22, 2021, Plaintiff Velasquez told Plaintiff his employment was terminated for (a) a violation because he reported a customer sale as final on his EPIP worksheet

13

when he did not yet have a signed contract from the current customer and (b) he did not treat an existing customer as a prospect when he added a dumpster at a new address to an customer's services for the same price as the first dumpster (i.e., doubling the customer's monthly fee). Defendant Velasquez had given his verbal approval to the contract addition and price, but Plaintiff had not submitted it to Kyle Aughe for review.

### III.    CAUSES OF ACTION

#### A. COUNT ONE: VIOLATIONS OF FFCRA AND FMLA

67. Plaintiff realleges Paragraphs 1 through 66 the same as if fully rewritten herein.

68. In refusing to grant paid or unpaid leave to Plaintiff when he contracted COVID-19 as reported in writing by Plaintiff to Defendant Velasquez.and in mandating that Plaintiff continue working while ill with COVID-19, Defendant Rumpke through its employees Defendant Velasquez and Defendant Bostian was in violation of the leave requirements of the FFCRA and the FMLA.

69. Defendant Bill Rumpke and Defendant Rumpke are responsible for the actions Rumpke employee Defendants.

#### B. COUNT TWO: WRONGFUL TERMINATION IN VIOLATION OF R.C. § 4123.90

70. Plaintiff realleges Paragraphs 1 through 69 the same as if fully rewritten herein.

71. Plaintiff's termination and other adverse job actions (such as, e.g., placing Plaintiff in the EPIP, issuing disciplinary notices for Plaintiff's violation of ambiguous, unclear or non-existent policies and failing to enforce the Anti-Harassment Policy regarding the Matt Bauer Incident) is in part due to Plaintiff's claims against Defendant Rumpke, a self-insured employer, for OBWC benefits.

72. Plaintiff's termination and other adverse employment action (as provided in the immediately preceding paragraph) as the result of Plaintiff's First OBWC Claim and Second OBWC Claim

constitute a violation of R.C. § 4123.90, which provides that no employer shall discharge or take any punitive action against any employee because the employee has filed a claim or instituted, pursued or testified in any proceedings under the Workers' Compensation Act for an injury that occurred in the course of and arising out of his employment with that employer.

73. Defendant Bill Rumpke and Defendant Rumpke are responsible for the actions Rumpke employee Defendants.

## C. COUNT THREE: WRONGFUL TERMINATION AND OTHER ADVERSE EMPLOYMENT ACTIONS AND RETALIATION PURSUANT TO R.C. § 4113.52 (OHIO'S "WHISTLEBLOWER STATUTE")

74. Plaintiff realleges Paragraphs 1 through 73 the same as if fully rewritten herein.

75. Plaintiff was terminated, in part, for his public and private complaints and reports as described in Paragraph 24 above.

76. Plaintiff made oral reports to Defendant Velasquez and subsequent written reports by email to Sandra Jennings or Ashley Essex in the HR Department, Richard Turner (who was Plaintiff's direct supervisor on the date of some reports) and Defendant Velasquez (who was Plaintiff's direct supervisor on the date of some reports) regarding Rumpke's wrongful and intentional violation of Customer Contracts by means of unauthorized electronic fund transfer as described in Paragraph 19 above, which violation of Customer Contracts constitutes an unfair or deceptive consumer sales act or practice or unconscionable consumer sales act under R.C. § 1345.01, 1345.02 and 1345.03 of the Ohio Consumer Sales Practices Act (R.C. 1345.01*ff.*); an unauthorized transfer under the Electronic Funds Transfer Act (15 U.S.C. §§ 1693*ff*); and, to Plaintiff's belief, a felony under the Ohio criminal fraud statute (R.C. Chapter 2913).

77. The termination of and adverse employment actions against an employee because the employee has provided, caused to be provided, or is about to provide or cause to be provided,

information to the employer, the Consumer Financial Protection Bureau ("CFPB"), or any other State, local, or Federal, government authority or law enforcement agency relating to any violation of, or any act or omission that the employee reasonably believes to be a violation of, any provision of the Consumer Financial Protection Act of 2010 ("CFPA") or any other provision of law that is subject to the jurisdiction of the CFPB, or any rule, order, standard, or prohibition prescribed by the CFPB is a violation of §1057 of the CFPA, 12 U.S. Code § 5567.

78. Plaintiff's employer, Defendant Rumpke, has authority to correct the violations of law described in this Count.

79. Defendant Rumpke's violation of Customer Contract provisions by means of unauthorized EFTs that had the effect of raising customer prices by amounts equal to 12% - 25% during the COVID-19 constituted illegal "price gouging."

80. Plaintiff reasonably believed that Defendant Rumpke's violation of Customer Contract provisions by means of unauthorized EFTs constituted a felony.

81. Defendant Rumpke did not cease to make unauthorized EFTs in violation of Customer Contracts after Plaintiff made his reports that customer price increases were unauthorized and in fact instructed salesmen to lie to their customers and state that the price increases were mistakes.

82. The actions of Defendant Rumpke through its employees Bostian and Aughe in terminating Plaintiff's employment and taking other adverse employment actions (such as, e.g., placing Plaintiff in the EPIP, issuing disciplinary notices for Plaintiff's violation of ambiguous, unclear or non-existent policies, failing to enforce the Anti-Harassment Policy regarding the Matt Bauer Incident and denying Plaintiff's OBWC complaints and lying to the Ohio Department of Job and Family Services regarding the reasons for Plaintiff's termination) as described herein under the circumstances described herein constitute a violation of R.C. 4113.52.

83. Defendant Bill Rumpke and Defendant Rumpke are responsible for the actions Rumpke employee Defendants.

## D. COUNT FOUR: WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY

84. Plaintiff realleges Paragraphs 1 through 83 the same as if fully rewritten herein.

85. The actions of Defendant Rumpke, through its employees Defendants Aughe, Velasquez and Bostian, in terminating Plaintiff's employment and taking other adverse employment actions against Plaintiff (such as, e.g., placing Plaintiff in the EPIP, issuing disciplinary notices for Plaintiff's violation of ambiguous, unclear or non-existent policies, failing to enforce the Anti-Harassment Policy regarding the Matt Bauer Incident, denying Plaintiff's OBWC complaints and causing Plaintiff to be denied unemployment compensation through false representations to the Ohio Department of Job and Family services that Plaintiff was terminated for just cause for failing to follow company policies) as a result of Plaintiff's oral and written objections to Defendant Rumpke's improper and illegal conduct as set forth in Paragraph 24 are violations of public policy.

86. Public policy is implicated by acts as described herein in violating Customer Contracts, the Ohio Consumer Sales Practices Act, the Electronic Funds Transfer Act, price gouging during a national emergency (i.e., COVID-19 pandemic and resulting government shut-downs) and committing criminal fraud (Ohio Revised Code Chapter 2913) against consumers.

87. Public policy is also implicated when Defendant Rumpke, through its Human Resources Director, Defendant Bostian, failed to take action required under Rumpke's Anti-Harassment Policy summarized above under Paragraphs 37 and 38 above even though Plaintiff satisfied the requirements for instituting a complaint under the policy. Specifically, Defendant Rumpke and Bostian failed to handle Plaintiff's complaint swiftly, attempted through Defendant Matt Bauer to convince Plaintiff to withdraw his complaint, failed to meet with Plaintiff to disclose the results of the investigation and to

Plaintiff's knowledge, failed to take any disciplinary action against Defendant Bauer. Defendant Rumpke retaliated against Plaintiff for filing the Anti-Harassment complaint by giving Plaintiff unfavorable reviews, failing to give him raises and generally holding him responsible for violation of policies that were ambiguous, unclear or non-existent. When Plaintiff requested to know what policy Plaintiff had violated to warrant discipline, Defendant Velasquez told Plaintiff he had poor time management.

### E. COUNT FIVE: VIOLATION OF TITLE VII OF CIVIL RIGHTS ACT OF 1964 (42 U.S.C. § 2000e *ff.*) (SEXUAL HARASSMENT AND SEXUALLY HOSTILE WORK ENVIRONMENT) AND STATE CIVIL RIGHTS LAW (R.C. § 4112 *ff.*)

88. Plaintiff realleges Paragraphs 1 through 87 the same as if fully rewritten herein.

89. Civil Rights Act of 1964 (42 U.S.C. 2000e *ff.*) provides that with respect to conduct between fellow employees, an employer (i.e., Defendant Rumpke in this action) is responsible for acts of verbal sexual harassment and creation of a sexually hostile environment in the workplace where the employer (or its agents or supervisory employees) knows or should have known of the conduct unless it can show that it took immediate and appropriate corrective action. Defendant Rumpke, through its employees responsible for such its actions in this regard, including but not limited to Defendant Bostian, knew or should have known of the violation (since the Matt Bauer Incident occurred at an open sales meeting and Plaintiff filed a prompt complaint with his supervisor, Defendant Velasquez and Defendant Matt Bauer himself is a key employee of Defendant Rumpke).

90. Knowledge of a management employees of Defendant Rumpke is attributed to Defendant Rumpke under the laws of agency.

91. The Anti-Harassment Policy, by its terms, is intended to prevent and address civil rights violations under Title VII of the Civil Rights Act and Ohio law, including acts of verbal sexual harassment and the creation of a sexually hostile work environment.

92. The Matt Bauer Incident followed by excessive coworker teasing as described in *Paragraph* 34 and Defendants Rumpke's, Bostian's, Velasquez's and Aughe's failure to promptly enforce Rumpke's Anti-Harassment Policy constitute and/or contribute to a sexually hostile work environment for Plaintiff.

93. *Defendants Bostian, and Kyle Aughe are responsible for contributing to and failing to address the verbal sexual harassment against Plaintiff, the sexually hostile work environment created by the Matt Bauer Incident and employees' subsequent sexually offensive taunting of Plaintiff and failing to follow the procedures under and to enforce the Anti-Harassment Policy.

94. Defendant Matt Bauer is responsible for his own conduct that constituted a violation of the Anti-Harassment Policy as described herein.

95. The result of the sexually hostile work environment was extreme work-related stress to Plaintiff that distracted from his job responsibilities and exacerbated his heart condition.

96. Defendant Bill Rumpke and Defendant Rumpke are responsible for all actions of Rumpke employee Defendants.

### E. COUNT SIX: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

97. Plaintiff realleges Paragraphs 1 through 96 the same as if fully rewritten herein.

98. The following actions on the part of Defendants Rumpke, Bostian, Aughe, Bauer and Velasquez constitute intentional infliction of emotional distress:

(a) issuing disciplinary notices for ambiguous, unclear and non-existent policies,

(b) verbal sexual harassment and creating a sexually hostile work environment for Plaintiff (Defendant Matt Bauer),

(c) failing to enforce the Anti-Harassment Policy,

19

(d) denying Plaintiff's valid First and Second OBWC Complaints,

(e) issuing unwarranted negative job performance evaluations,

(f) falsely accusing Plaintiff of making threats of violence against Bill Rumpke, Jr.,

(g) failing to grant Plaintiff time off during his COVID-19 illness, and

(h) causing the denial of Plaintiff's claim for unemployment benefits by means of false
communications to the Ohio Department of Job and Family Services that Plaintiff was
terminated for cause as the result of failing to follow company policies.

99. The actions described in the immediately preceding paragraph were extreme and outrageous,
beyond the bounds of conduct acceptable in a civilized society, intended to cause Plaintiff extreme
emotional distress (or to quit his employment), and actually the cause of Plaintiff's extreme emotional
distress.

100. Defendant Bill Rumpke and Defendant Rumpke are responsible for the actions Rumpke
employee Defendants.

## F. COUNT SEVEN: DISCRIMINATION/RETALIATION BASED UPON RELIGION (VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT AND STATE CIVIL RIGHTS LAW (R.C. § 4112 ff.)

101. Plaintiff realleges Paragraphs 1 through 100 the same as if fully rewritten herein.

102. Plaintiff's disciplinary notice on January 23, 2019 for leaving his territory to make a sales
call actually was a pretext for discrimination on the basis of Plaintiff's religion (which opposes
abortion) by Defendant Aughe, who is known for having "liberal," pro-choice views because Plaintiff

on that day also appeared during his lunch break on televised news coverage of a Covington Catholic High School at anti-abortion rally of which Aughe disapproved.

103. From time to time, Plaintiff asked to and was allowed by Defendant Velasquez to pray during meetings between Plaintiff and management.

104. Adverse employment actions against Plaintiff by Defendant Kyle Aughe, including unfavorable performance reviews, failure to address his Anti-Harassment Policy complaint and take action in accordance with such Policy, failure to grant paid and unpaid sick leave when Plaintiff contracted COVID-19, disciplinary actions for unclear, non-existent or ambiguous "policies," failure to give regular Plaintiff raises that he earned (even when Plaintiff was given a sales award), employment termination and causing the denial of unemployment benefits to Plaintiff constitute illegal discrimination/retaliation based upon Plaintiff's anti-abortion religious beliefs and Plaintiff's habit of praying during meetings between Plaintiff and his superiors.

105. Defendant Bill Rumpke and Defendant Rumpke are responsible for the actions of other employee Defendants.

106. Defendants' conduct in connection with all of the actions described herein has been malicious, entitling Plaintiff to punitive damages.

## IV. DAMAGES.

As the proximate result of the Claims, Plaintiff has suffered and claims the following damages:

(1) Loss of salary at his ending base salary rate (approximately $42,000) plus an average of the commissions he earned during calendar year 2019 (calendar year 2020 being an unusual year due to the COVID-19 shut-down) PLUS the annual benefits Plaintiff received (estimated at 15% of salary) PLUS $325 car allowance PLUS Rumpke's contribution toward retirement benefits ("Annual Damages") MULTIPLIED BY the remaining years of Plaintiff's working life (i.e., to the age of 65) from the date of;

21

(2) Annual damages MULITIPLIED BY the number of years between the date of Plaintiff's termination through the date of collection of judgment main his favor;

(3) Plaintiff has suffered damages to his ability to obtain future employment due to his record of having been terminated by Rumpke;

(4) Plaintiff has suffered additional damages due to Defendants' harsh, malicious and punitive treatment of him, including Defendant Rumpke's false representations with respect to the reasons for his termination;

(5) Plaintiff has suffered additional damages due to his lack of income following his termination incurring of interest and penalties on his obligations due to such absence of income;

(6) Plaintiff has suffered additional damages;

(7) Plaintiff has suffered additional physical damages and exacerbation of his heart problems as the result of job-related stress as provided herein; and

(8) Plaintiff has incurred attorney fees and costs in connection with the filing of this action;

(9) Defendants' actions have been malicious, entitling Plaintiff to punitive damages.

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendant and requests that this Court:

1. Grant Plaintiff an award of compensatory damages consisting of back wages and other benefits, including retirement benefits, to which he would have been entitled had he been continuously employed with Rumpke in his position full-time from the date of his termination and for a period of the remaining years of his expected employment (i.e., to age 65);

2. Grant Plaintiff an award for pain and suffering according to proof in excess of $25,000;

3. Grant Plaintiff an award of his legal fees and costs of this action;

4. Grant Plaintiff an award of additional compensatory damages in excess of $25,000;

5. Grant Plaintiff punitive damages; and

6. Grant Plaintiff all other such relief as this Court may find necessary and proper.

Respectfully submitted,

/s/ Carolyn A. Taggart

Carolyn A. Betts
Counsel for Plaintiff Donald A. Wegman
6653 Stewart Road
Cincinnati, Ohio 45236
Cell: 513-325-5676
cabettslaw@zoomtown.com

## JURY DEMAND

Plaintiff demands a trial by a jury of the maximum number of jurors as provided by law.

/s/ Carolyn A. Betts
Carolyn A. Betts
Attorney for Plaintiff Donald A. Wegman

23

## PLAINTIFF'S NOTICE OF LAWSUIT AND REQUEST TO WAIVER OF SERVICE OF SUMMONS UPON DEFENDANTS RUMPKE OF OHIO, INC. AND RUMPKE CONSOLIDATED COMPANIES, INC.

Plaintiff has contemporaneously with the filing of this Complaint served upon the Defendants Rumpke of Ohio Inc. and Rumpke Consolidated Companies, Inc. a request to waiver service of summons along with a Waiver of Service of Summons. Respectfully submitted,

/s/ Carolyn A. Betts
Carolyn A. Betts
Counsel for Plaintiff Donald A. Wegman
6653 Stewart Road
Cincinnati, Ohio 45236
Cell: 513-325-5676
cabettslaw@zoomtown.com

# IN THE COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| DONALD A. WEGMAN<br>8238 Bonanza Lane<br>Cincinnati, OH 45255 | : <br> : <br> : | CASE NO.: **A2102477** |
| | : | JUDGE _____ |
| Plaintiff, | : | PRAECIPE FOR NON-SERVICE |
| vs. | : | TO RUMPKE DEFENDANTS |
| | : | |
| RUMPKE OF OHIO, INC.<br>c/o James E. Thaxton<br>10795 Hughes Road<br>Cincinnati OH 45251, et al. | : <br> : <br> : | |

In the above captioned matter, please do not deliver a summons and complaint to

defendants RUMPKE OF OHIO, INC, and RUMPKE CONSOLIDATED COMPANIES, INC.

for the reason that Plaintiff intends to deliver to them a waiver of summons and complaint

pursuant to new Ohio Civil Rule 4.7.

\

Carolyn A. Betts, Esq. (0029077)
6653 Stewart Road
Cincinnati, OH 45236
513-325-5676
cabettslaw@zoomtown.com

2021 JUL 20 P 3: 32

FILED

CLERK OF COURTS
HAMILTON COUNTY, OH
COMMON PLEAS

1




D132483879 CLF

| COURT OF COMMON PLEAS<br>HAMILTON COUNTY, OHIO | CLASSIFICATION FORM<br>WWW.COURTCLERK.ORG | AFTAB PUREVAL<br>CLERK OF COURTS |
|---|---|---|

CASE NUMBER **A 2 1 0 2 4 7 7** PLAINTIFF: Donald Wegman

PURSUANT TO SUPERINTENDENCE RULE 4, THIS CASE WAS ORIGINALLY FILED AND DISMISSED

UNDER CASE NUMBER:_____ BY JUDGE _____

## PLEASE INDICATE CLASSIFICATION INTO WHICH THIS CASE FALLS (please only check one):

- [ ] Other Tort – C360
- [x] Personal Injury – C310
- [ ] Wrongful Death – C320
- [ ] Vehicle Accident – C370

- [ ] Professional Tort – A300
- [ ] Personal Injury – A310
- [ ] Wrongful Death – A320
- [ ] Legal Malpractice – A330
- [ ] Medical Malpractice – A340

- [ ] Product Liability – B350
- [ ] Personal Injury – B310
- [ ] Wrongful Death – B320

- [ ] Worker's Compensation
- [ ] Non-Compliant Employer – D410
- [ ] Appeal – D420

- [ ] Administrative Appeals – F600
- [ ] Appeal Civil Service – F610
- [ ] Appeal Motor Vehicle – F620
- [ ] Appeal Unemployment – F630
- [ ] Appeal Liquor – F640
- [ ] Appeal Taxes – F650
- [ ] Appeal Zoning – F660

- [ ] Certificate of Qualification – H600

- [x] Other Civil – H700-34  *wrongful termination employment discrimination*
- [ ] Appropriation – H710
- [ ] Accounting – H720
- [ ] Beyond Jurisdiction –730
- [ ] Breach of Contract – 740
- [ ] Cancel Land Contract – 750
- [ ] Change of Venue – H760
- [ ] Class Action – H770
- [ ] Convey Declared Void – H780
- [ ] Declaratory Judgment – H790
- [ ] Discharge Mechanics Lien – H800
- [ ] Dissolve Partnership – H810
- [ ] CONSUMER SALES ACT (1345 ORC) – H820
- [ ] Check here if relief includes declaratory judgment, injunction or class action recovery – H825
- [ ] Habeas Corpus – H830
- [ ] Injunction – H840
- [ ] Mandamus – H850
- [ ] On Account – H860
- [ ] Partition – H870
- [ ] Quiet Title – H880
- [ ] Replevin – H890
- [ ] Sale of Real Estate – H900
- [ ] Specific Performance – 910
- [ ] Restraining Order – H920
- [ ] Testimony – H930-21
- [ ] Environmental – H940
- [ ] Cognovit – H950
- [ ] Menacing by Stalking – H960
- [ ] Repo Title – Transfer of Title Only –970
- [ ] Court Ordered Title – H980
- [ ] Injunction Sexual Predator – 990
- [ ] SB 10 – Termination – H690
- [ ] SB 10 – Reclassification – H697

2021 JUL 20 P 3:33
CLERK OF COURTS
HAMILTON COUNTY, OH
COMMON PLEAS

DATE: 7/20/21

ATTORNEY (PRINT): Carolyn A Betts

OHIO SUPREME COURT NUMBER: 0029077

Revised 05/03/2021

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO


<u>DONALD A WEGMAN</u>
**PLAINTIFF**

                                        Use below number on
                                        all future pleadings

        -- vs --

                                        No.  A 2102477
                                             SUMMONS

<u>RUMPKE OF OHIO INC</u>
**DEFENDANT**


        KYLE AUGHE
        6720 OAKFIELD DRIVE              D - 2
        DAYTON OH 45215




You are notified
that you have been named Defendant(s) in a complaint filed by

        DONALD A WEGMAN
        8238 BONANZA LANE
        CINCINNATI OH 45255

                                                    Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**AFTAB PUREVAL, 1000 MAIN STREET   ROOM 315,
CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.


Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.


If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.



Name and Address of attorney          AFTAB PUREVAL
CAROLYN ANNE BETTS                    Clerk, Court of Common Pleas
JOHN E STILLPASS ATTYS AT LAW            Hamilton County, Ohio
4901 HUNT ROAD SUITE 103
CINCINNATI       OH        45242
                                      By  <u>RICK HOFMANN</u>
                                                         Deputy


                                      Date:   July 21, 2021





D132487389



VERIFY RECORD

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO

<u>DONALD A WEGMAN</u>
   **PLAINTIFF**

                                              Use below number on
                                              all future pleadings

        -- vs --
                                      No.  A 2102477
                                              SUMMONS

<u>RUMPKE OF OHIO INC</u>
   **DEFENDANT**

        ERIC BOSTIAN
        7982 CELESTIAL CIRCLE                    D - 6
        LIBERTY TOWNSHIP OH 45044

You are notified
that you have been named Defendant(s) in a complaint filed by

        DONALD A WEGMAN
        8238 BONANZA LANE
        CINCINNATI OH 45255

                                                    Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**AFTAB PUREVAL, 1000 MAIN STREET   ROOM 315,**
**CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.

Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.

If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.

Name and Address of attorney            AFTAB PUREVAL
CAROLYN ANNE BETTS                      Clerk, Court of Common Pleas
JOHN E STILLPASS ATTYS AT LAW             Hamilton County, Ohio
4901 HUNT ROAD SUITE 103
CINCINNATI      OH       45242
                                    By  <u>RICK HOFMANN</u>
                                                    Deputy

                                    Date:   July 21, 2021



D132487815



VERIFY RECORD

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO


<u>DONALD A WEGMAN</u>
**PLAINTIFF**

                                            Use below number on
                                            all future pleadings

        -- vs --

                                        No.  A 2102477
                                              SUMMONS
<u>RUMPKE OF OHIO INC</u>
    **DEFENDANT**


        WILLIAM RUMPKE JR
        11300 TERWILLIGERS KNOLL CT          D - 5
        CINCINNATI OH 45249




You are notified
that you have been named Defendant(s) in a complaint filed by

        DONALD A WEGMAN
        8238 BONANZA LANE
        CINCINNATI OH 45255

                                                    Plaintiff(s)
in the Hamilton County, COMMON PLEAS CIVIL Division,
**AFTAB PUREVAL, 1000 MAIN STREET   ROOM 315,**
**CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.


Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.


If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.



Name and Address of attorney            AFTAB PUREVAL
CAROLYN ANNE BETTS                      Clerk, Court of Common Pleas
JOHN E STILLPASS ATTYS AT LAW             Hamilton County, Ohio
4901 HUNT ROAD SUITE 103
CINCINNATI        OH         45242
                                        By  <u>RICK HOFMANN</u>
                                                      Deputy


                                        Date:   July 21, 2021




D132487786



VERIFY RECORD

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO


<u>DONALD A WEGMAN</u>
  **PLAINTIFF**

                Use below number on
                all future pleadings

    -- vs --
              No. A 2102477
                SUMMONS

<u>RUMPKE OF OHIO INC</u>
  **DEFENDANT**


   JESUS JESSE VELASQUEZ
   5165 MALLET CLUB DRIVE     D - 4
   DAYTON OH 45439




You are notified
that you have been named Defendant(s) in a complaint filed by

   DONALD A WEGMAN
   8238 BONANZA LANE
   CINCINNATI OH 45255

                  Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**AFTAB PUREVAL, 1000 MAIN STREET ROOM 315,
CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.


Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.


If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.



Name and Address of attorney     AFTAB PUREVAL
CAROLYN ANNE BETTS       Clerk, Court of Common Pleas
JOHN E STILLPASS ATTYS AT LAW    Hamilton County, Ohio
4901 HUNT ROAD SUITE 103
CINCINNATI   OH   45242

           By <u>RICK HOFMANN</u>
                  Deputy


           Date: July 21, 2021





D132487699


VERIFY RECORD

COURT OF COMMON PLEAS
HAMILTON COUNTY, OHIO


<u>DONALD A WEGMAN</u>
    **PLAINTIFF**

           Use below number on
           all future pleadings

    -- vs --

           No.  A 2102477
                SUMMONS

<u>RUMPKE OF OHIO INC</u>
    **DEFENDANT**


    MATTHEW J BAUER
    7277 WETHERINGTON DR         D - 3
    WEST CHESTER OH 45069



You are notified
that you have been named Defendant(s) in a complaint filed by

    DONALD A WEGMAN
    8238 BONANZA LANE
    CINCINNATI OH 45255

                        Plaintiff(s)

in the Hamilton County, COMMON PLEAS CIVIL Division,
**AFTAB PUREVAL, 1000 MAIN STREET  ROOM 315,
CINCINNATI, OH 45202.**
You are hereby summoned and required to serve upon the plaintiff's
attorney, or upon the plaintiff, if he/she has no attorney of record, a
copy of an answer to the complaint within twenty-eight (28) days after
service of this summons on you, exclusive of the day of service. Your
answer must be filed with the Court within three (3) days after the
service of a copy of the answer on the plaintiff's attorney.

Further, pursuant to Local Rule 10 of Hamilton County, you are also required to
file a Notification Form to receive notice of all future hearings.

If you fail to appear and defend, judgement by default will be rendered
against you for the relief demanded in the attached complaint.


Name and Address of attorney        AFTAB PUREVAL
CAROLYN ANNE BETTS             Clerk, Court of Common Pleas
JOHN E STILLPASS ATTYS AT LAW      Hamilton County, Ohio
4901 HUNT ROAD SUITE 103
CINCINNATI      OH      45242

                    By  <u>RICK HOFMANN</u>
                              Deputy

                  Date:  July 21, 2021



D132487591



VERIFY RECORD


**UNITED STATES**
**POSTAL SERVICE.**

ELECTRONIC CERTIFIED MAIL SERVICE RETURN
SUMMONS & COMPLAINT
A 2102477    D3
MATTHEW J BAUER
FILED: 07/26/2021  6:56:01

Date Produced: 07/26/2021

HAMILTON COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 7194 5168 6310 0943 9178.
Our records indicate that this item was delivered on 07/24/2021 at 02:38 p.m. in WEST CHESTER, OH
45069. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.

Customer Reference Number:        16463743SEQ1



**UNITED STATES**
**POSTAL SERVICE.**

ELECTRONIC CERTIFIED MAIL SERVICE RETURN
SUMMONS & COMPLAINT
A 2102477    D6
ERIC BOSTIAN
FILED: 07/26/2021  7:58:40

Date Produced: 07/26/2021

HAMILTON COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 7194 5168 6310 0943 9208.
Our records indicate that this item was delivered on 07/24/2021 at 12:49 p.m. in MIDDLETOWN, OH
45044. The scanned image of the recipient information is provided below.

Signature of Recipient :
(Authorized Agent)

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.

Customer Reference Number:        16463763SEQ1


**UNITED STATES POSTAL SERVICE**

ELECTRONIC CERTIFIED MAIL SERVICE RETURN
~~SUMMONS & COMPLAINT~~
A 2102477    D5
WILLIAM RUMPKE JR
FILED: 08/02/2021  6:56:02

Date Produced: 08/02/2021

HAMILTON COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 7194 5168 6310 0943 9192.
Our records indicate that this item was delivered on 07/28/2021 at 02:42 p.m. in CINCINNATI, OH
45249. The scanned image of the recipient information is provided below.

Signature of Recipient :

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.

Customer Reference Number:        16463759SEQ1


**UNITED STATES
POSTAL SERVICE™**

ELECTRONIC CERTIFIED MAIL SERVICE RETURN
SUMMONS & COMPLAINT
A 2102477    D4
JESUS JESSE VELASQUEZ
FILED: 08/02/2021  8:08:29

Date Produced: 08/02/2021

HAMILTON COUNTY CLERK OF COURTS:

The following is the delivery information for Certified Mail™ item number 7194 5168 6310 0943 9185.
Our records indicate that this item was delivered on 07/26/2021 at 10:28 a.m. in DAYTON, OH 45439.
The scanned image of the recipient information is provided below.

Signature of Recipient :
(Authorized Agent)

Address of Recipient :

Thank you for selecting the Postal Service for your mailing needs.  If you require additional assistance,
please contact your local post office or Postal Service representative.

Sincerely,
United States Postal Service

The customer reference number shown below is not validated or endorsed by the United States Postal
Service. It is solely for customer use.

Customer Reference Number:        16463753SEQ1